UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| ANDREW BINKS, | Case No. 1:20-cv-78 |
| Plaintiff, | McFarland, J. |
| | Litkovitz, M.J. |
| v. | |
| KAREN L. COLLIER, *et al.*, | **REPORT AND** |
| Defendants. | **RECOMMENDATION** |

Plaintiff Andrew Binks brings this action pro se against defendants Karen and Tomas Collier[1] alleging breach of contract, fraud, obstruction, witness tampering, malicious prosecution, perjury, violations under the Racketeer Influenced and Corrupt Organizations Act (RICO), wire fraud, and mail fraud. (Doc. 1).[2] This matter is before the Court on defendants' motion to dismiss (Doc. 21), plaintiff's response in opposition (Doc. 28), plaintiff's motion for sanctions (Doc. 29), and defendants' reply memorandum (Doc. 30).

**I. Facts**

Plaintiff makes the following allegations in his complaint: Plaintiff and defendant Karen Collier were formerly married. (Doc. 1 at PAGEID 3). Defendant Tomas Collier is defendant Karen Collier's current husband. (*Id*.). Plaintiff alleges that on or about January 27, 2016, he and Karen Collier entered into an "agreement" in a domestic relations court in Ohio. (*Id*. at PAGEID 4). As best the Court can discern, the agreement plaintiff references is an "Agreed Entry" from the Butler County, Ohio Domestic Relations court arising from plaintiff and

---

[1] Plaintiff spells defendant's name as "Tomas" while defendants, in their motion to dismiss, spell defendant's name as "Thomas." (Docs. 1, 21). For purposes of this Report and Recommendation the Court will adopt the spelling of the non-moving party, "Tomas."

[2] Plaintiff originally filed his complaint on March 8, 2019 in the United States District Court for the Southern District of Maryland. (Doc. 1). On September 13, 2019, defendants filed a motion to dismiss for lack of jurisdiction. (Doc. 12). The Court granted defendant's motion to dismiss, but transferred, as opposed to dismissing, the case to the Southern District of Ohio "pursuant to 28 U.S.C. §1406(a)." (Docs. 16, 17).

defendant Karen Collier's divorce. (Doc. 28, Exh. 1, at PAGEID 243).[3] The "agreement" states, in pertinent part, that defendant Karen Collier, "shall cooperate fully to dismiss with prejudice the pending domestic violence case pending in Area II Court." (Doc. 28, Exh. 1, at PAGEID 244). Plaintiff alleges that on May 19, 2016, defendant Karen Collier breached this agreement by informing the prosecutor that she wished to proceed with the pending case. (Doc. 1 at PAGEID 4). Plaintiff further alleges that in February 2019, defendant Karen Collier entered into an agreement "where she would contact the prosecutor in writing and state, she had no objection to a new trial being conducted." (*Id*.).[4] Plaintiff states that on February 19, 2019, defendant breached the agreement by not appearing to oppose a new trial. (*Id*.). Plaintiff asserts defendant Karen Collier communicated to her family members that she only entered the agreement for the money, and never intended to follow its terms. (*Id*. at PAGEID 6). The Court will discuss additional facts as necessary in the evaluation of plaintiff's individual causes of action.

## II. Standard of Review

Defendants move the Court to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. (Doc. 21). In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of

---

[3] Paragraphs 19-25 of plaintiff's complaint relate to his breach of contract and fraud causes of action. (Doc. 1 at PAGEID 4). Plaintiff fails to attach any exhibits relating to his complaint in support. Plaintiff does however attach a seven-page exhibit to his response in opposition to defendant's motion to dismiss. (Doc. 28, Exh. 1). This exhibit purports to be the "agreement" that plaintiff contends forms the basis for his Count I breach of contract and Count III fraud causes of action. (*Id*.). Accordingly, the Court will treat this exhibit as such. *See Sollenberger v. Sollenberger*, 173 F. Supp. 3d 608, 617 (S.D. Ohio Mar. 25 2016) (holding that a Court may consider the complaint, in addition to documents referenced in the complaint or central to plaintiff's claim for purpose of a motion to dismiss.).

[4] Plaintiff failed to attach any "agreement" as an exhibit to his complaint or subsequent pleadings relating to this cause of action.

the claim showing that the pleader is entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although a plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 555, 570). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Ashcroft*, 556 U.S. 662, 678. "Put another way, bare assertions of legal conclusions are not sufficient." *Sollenberger*, 173 F. Supp. 3d at 618. And, "[t]o survive a 12(b)(6) motion to dismiss, a plaintiff must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action is not enough." *Id.* at 617.

The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557.

3

It is well settled that a document filed pro se is "to be liberally construed" and that a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, the Sixth Circuit has recognized that the Supreme Court's liberal construction case law has not had the effect of "abrogat[ing] basic pleading essentials" in pro se suits. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

## III. Resolution

### a) RICO, Mail Fraud, and Wire Fraud (Counts VIII, IX, and X)[5]

In his eighth, ninth, and tenth causes of action, plaintiff presents a RICO claim against both defendants, and what appears to be a criminal cause of action for mail and wire fraud only against defendant Karen Collier. In support of his causes of action, plaintiff alleges defendants constituted an enterprise, "repeatedly lied" in court in criminal and civil cases, used their influence to obstruct and tamper with witness testimony in pending criminal and civil litigation, and profited from their tampering and lying in court. (Doc. 1 at PAGEID 8-9). Plaintiff further alleges that defendant Karen Collier contacted the Maryland Motor Vehicle Administration (MMVA) by telephone, lied about her identity, and changed plaintiff's mailing address to her attorney's mailing address in Ohio. (*Id.* at PAGEID 11).

Mail and wire fraud are criminal statutes that do not, by themselves, give rise to a private civil cause of action. *See Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997); *see also Saro v. Brown*, 11 F. App'x 387, 388 (6th Cir. 2001) (holding that violations of mail and wire fraud sections of the federal criminal code do not give rise to independent causes

---

[5] Although plaintiff appears to number his causes of action numerically, his "Mail Fraud" and "Wire Fraud" causes of action are incorrectly numbered "IV" and "IV." (Doc. 1 at PAGEID 11-12). Because these causes of action are ninth and tenth numerically in the complaint, the Court will treat them accordingly as the ninth and tenth causes of action.

of action). Mail and wire fraud may however be asserted as predicate acts in a civil RICO claim. *Heinrich v. Waiting Adoption Serv., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012). To state a RICO claim based on predicate acts of mail and/or wire fraud, a plaintiff must "adequately allege[] a scheme to defraud, the use of the mail or wires in furtherance of the scheme, and a sufficient factual basis from which to infer scienter." *Id.* at 409.

Plaintiff's RICO claim is a separate and factually distinct claim from his mail and wire fraud causes of action. That is, plaintiff's mail and wire fraud causes of actions focus on the single act of defendant Karen Collier allegedly contacting the MMVA by telephone and changing the mailing address of plaintiff. Plaintiff's RICO claim, however, is based upon defendants' "enterprise" where both defendants allegedly lied in court and used their influences and threats of violence to obstruct witness testimony. Plaintiff claims that defendants "have profited by [their] use of influence, violence, and threats of violence to affect witness testimony." (Doc. 1 at PAGEID 9). But plaintiff makes no attempt to explain to the Court or defendants how the single act of one defendant contacting the MMVA has any connection to, or acts as a predicate offense for, his RICO claim.

Plaintiff's complaint provides no factual content or context from which the Court may reasonably infer that a) the defendants engaged in conduct of an enterprise through a pattern of racketeering activity, b) defendant Karen Collier used the postal service or other interstate mail carrier to carry out fraudulent acts, so as to constitute mail fraud, and/or c) defendant Karen Collier used wire communications in the existence of a scheme to defraud, and that the scheme was intended to deprive plaintiff of money or property. *Iqbal*, 556 U.S. at 678; *McCormick*, 2020 WL 4334886, at *5. Plaintiff presented the Court with no facts to suggest that there existed a "scheme to defraud" and the use of mail was "in furtherance of the scheme." *United States v.*

5

*Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005). Further, plaintiff's allegations in support of his RICO, mail, and wire fraud claims are unsupported by specific facts and amount to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

Plaintiff's "unadorned, the defendant-unlawfully-harmed-me accusation[s]" cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 677–78. Accordingly, plaintiff's eighth, ninth, and tenth causes of action fail to state a claim upon which relief may be granted and should be dismissed.

### b) Breach of Contract and Fraud (Counts I and III)

In his first and third causes of action, plaintiff alleges breach of contract and fraud against defendant Karen Collier. (Doc. 1). Plaintiff alleges that he and Karen Collier entered into a written contract on January 27, 2016 in a domestic relations court in Ohio. (*Id*. at PAGEID 4). Plaintiff alleges he made the requisite payment in accordance with the agreement, but Karen Collier failed to honor her agreement to assist the state prosecutor in dismissing a criminal case against plaintiff. (*Id*.). Plaintiff alleges Karen Collier breached the agreement when on May 19, 2016, she changed her position and told the prosecutor she wanted to proceed with the case. (*Id*.). Plaintiff further alleges that Karen Collier made statements to other family members that she only entered into the agreement for the money and never intended to follow through with the agreement. (*Id*. at PAGEID 6). Plaintiff alleges that he and the domestic relations court relied on Karen Collier's statements in approving the agreement. (*Id*.).

The Court lacks subject-matter jurisdiction over Counts I and III. "[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Intern., Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009). *See Fleming v. Gloege*, No. 2:14-cv-2158, 2015 WL 6107620, at *1

(S.D. Ohio Oct. 20, 2015) (citing *Sinochem Int'l. Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (internal citations omitted) (holding that "[a] federal court 'generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction).'").

It appears that plaintiff's first and third causes of action arise from a state domestic relations court order which plaintiff avers to be a contract capable of being breached. (Doc. 28, Exh. 1). But, "[t]he domestic-relations exception deprives federal courts of diversity jurisdiction if the plaintiff seeks to modify or interpret the terms of an existing divorce, alimony, or child-custody case." *Fleming*, 2015 WL 6107620, at *2 (citing *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 795 (6th Cir. 2015). The decision in *McLaughlin v. Cotner*, 193 F.3d 410 (6th Cir. 1999) is instructive in this regard.

In *McLaughlin*, the plaintiff filed a complaint against the defendant, her former husband, alleging breach of an agreement for the sale of real estate. *Id*. at 411. The agreement was part of a separation agreement incorporated into a divorce decree. *Id*. The agreement provided for the sale of the real estate "as soon as possible" and "shall immediately be placed on the active real estate market for sale, and shall remain there continuously until it is sold." *Id*. The district court dismissed plaintiff's cause of action *sua sponte* for lack of federal subject matter jurisdiction. *Id*. In affirming the decision of the district court, the Sixth Circuit Court of Appeals held, "the obligations now imposed [as a result of the divorce decree] are not those imposed by the law of contract or torts, as plaintiff contends, but are those imposed by the divorce decree. Therefore, the federal court lacks jurisdiction, as this case is not a tort or contract suit that merely has domestic relations overtones, but is one seeking a declaration of rights and obligations arising from marital status." *Id*. at 414. *See also Fleming*, 2015 WL 6107620, at *2 (citing *Chevalier*,

803 F.3d at 795-96 (holding that a plaintiff "[m]ay not artfully cast a suit seeking to modify or interpret the terms of a divorce . . . as a state-law contract or tort claim in order to access the federal courts.").

Similar to *McLaughlin* and *Fleming*, the "agreement" forming the basis of plaintiff's causes of action for fraud and breach of contract is an "Agreed Entry" seeking to resolve disputes in a state domestic relations divorce case between plaintiff and defendant Karen Collier. (Doc. 28, Exh. 1). Just as the plaintiff in *McLaughlin* alleged breach of contract over the sale of real estate as stated in the divorce decree, plaintiff here alleges breach of contract based upon defendant Karen Collier's alleged violation of the terms of the domestic relations court order. Accordingly, the Court lacks subject-matter jurisdiction over plaintiff's first and third causes of action.

### c) Breach of Contract (Count II)

Regarding plaintiff's cause of action for breach of contract in Count II of the complaint, plaintiff alleges that on February 17, 2019, defendant Karen Collier entered into a written agreement whereby she would contact the prosecutor in writing and state that she had no objection to a new trial being conducted. (Doc. 1 at PAGEID 4). Plaintiff alleges that on February 19, 2019, defendant Karen Collier breached this agreement when she failed to appear for a court hearing to advise the court that she did not oppose a new trial. (*Id.*).

The Court is unable to discern from the facts alleged a viable claim for breach of contract. "A breach of contract claim under Ohio law has four elements: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage to the plaintiff." *Kendell v. Shanklin*, No. 2:20-cv-985, 2020 WL 5300926, at *5 (S.D. Ohio Sept. 4, 2020). Although plaintiff alleges the existence, and subsequent breach of, a "written agreement

on or about Feb. 17, 2019" (Doc. 1 at PAGEID 5), plaintiff fails to attach the written agreement to his complaint and/or subsequent pleadings or identify the parties to the contract or the actual terms of the contracts allegedly breached. A party "can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached." *Robinson v. Chuy's Opco, Inc.*, No. 1:17-cv-123, 2017 WL 4247547, at *3 (S.D. Ohio Sept. 25, 2017). *See Northampton Rest. Group, Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518, 521-22 (6th Cir. 2012) (where the Sixth Circuit affirmed the dismissal of a breach of contract claim on 12(b)(6) grounds where plaintiff failed to attach the contract or describe the language of the contractual provision allegedly breached).

The Court is therefore unable to discern from plaintiff's conclusory assertions the existence of a contract, the parties to and terms of such contract, and what defendant Karen Collier specifically did, or failed to do, that violated plaintiff's rights under the law. Accordingly, plaintiff's second cause of action should be dismissed for failure to state a claim.

### d) Obstruction, Witness Tampering, and Perjury (Counts IV, V, and VII)

Plaintiff's fourth, fifth, and seventh causes of action allege claims of obstruction, witness tampering, and perjury. Plaintiff's claims are allegedly based on the events surrounding his criminal conviction(s) in state court. Plaintiff alleges that an individual named "Austin Binks" saw an incident that occurred in November 2015. (Doc. 1 at PAGEID 6). Plaintiff alleges that defendant Karen Collier told Austin not to tell anyone what he saw. (*Id.*). Plaintiff further alleges that defendant Tomas Collier "threatened to kill Austin if he told anyone what he saw." (*Id.*). Plaintiff claims that defendant Tomas Collier "obstructed justice" by his threats and even "assaulted Austin several times when he brought up the issue of testifying." (*Id.*). Plaintiff states that defendant Karen Collier admitted to Austin that she lied to have plaintiff arrested and

9

convicted and would not allow Austin to testify. (*Id*. at PAGEID 7). Plaintiff claims that the conduct of defendants resulted in him losing his criminal case. (*Id*.).

Regarding his perjury cause of action, plaintiff's conclusory assertions that defendants "have made multiple lies during sworn statements" (Doc. 1 at PAGEID 10) provide no factual content or context from which the Court may reasonably infer that the named defendants violated plaintiff's rights. *Iqbal*, 556 U.S. at 678. Further, to the extent plaintiff claims defendants offered perjured testimony at trial, they are entitled to absolute immunity. A lay witness is entitled to absolute immunity from civil liability based on his or her trial testimony "no matter how egregious or perjurious" the testimony is alleged to have been. *Maldowan v. City of Warren*, 578 F.3d 351, 390 (6th Cir. 2009) (citing *Briscoe v. LaHue*, 460 U.S. 325, 328 (1983)); *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999). For these reasons, plaintiff has failed to state a claim against defendants for perjury.

Plaintiff's obstruction and witness tampering causes of action should also be dismissed for failure to state a claim. Obstruction and witness tampering arise under criminal statutes, and there is therefore no private civil action available to plaintiff for alleged violations of criminal statutes. *See Kafele v. Frank and Wooldridge Co*., 108 F. App'x 307, 308-09 (6th Cir. 2004); *Hamilton v. Reed*, 29 F. App'x 202, 204 (6th Cir. 2002) (plaintiff possessed no private right of action against the defendants for alleged violations of federal criminal statutes); *Giebell v. Heartland Dublin Nursing Facility*, No. 2:20-cv-3655, 2020 WL 6287014, at *3 (S.D. Ohio Oct. 27, 2020); *Norris v. Eagle*, No. 1:14-cv-906, 2015 WL 5084779, at *9 (S.D. Ohio Aug. 27, 2015) (holding no private cause of action for a violation of the federal crime of obstruction of justice). *See also George v. State*, Nos. 10AP-4, 10AP-97, 2010 WL 4264417, at *7 (Ohio Ct. App. Oct. 28, 2010) ("In the absence of a specific provision to the contrary, criminal statutes

generally do not create a private cause of action, but give rise only to a right of prosecution by the state"). *See generally Jacobson v. Kaforey*, 75 N.E.3d 203, 208 (Ohio 2016) (Kennedy, J. concurring); *Noe v. Housel*, 153 N.E.3d 941, 946-47 (Ohio Ct. App. 2020); *Hershey v. Edelman*, 932 N.E.2d 386, 393 (Ohio Ct. App. 2010). As such, plaintiff's obstruction and witness tampering claims should be dismissed for failure to state a claim because plaintiff cannot recover civilly for the violation of criminal statutes.

### e) Malicious Prosecution (Count VI)

In support of his malicious prosecution cause of action, plaintiff alleges that he filed a Chapter 7 bankruptcy case in June 2016. (Doc. 1 at PAGEID 8). In October 2016, defendant Karen Collier filed an "adversary claim" stating that plaintiff transferred marital property "in violation of bankruptcy law." (*Id.*). Plaintiff alleges that in August 2018, a settlement agreement was entered into where defendant Karen Collier "stated that she had no interest in this property." (*Id.*). Defendant Karen Collier's adversary claim was dismissed in February 2019. (*Id.*). Plaintiff claims that defendant Karen Collier brought her action without probable cause and filed her claim intentionally and maliciously. (*Id.*).

Plaintiff's malicious prosecution cause of action is based upon defendant Karen Collier's alleged conduct in intentionally and maliciously, and without probable cause, filing an adversary claim in bankruptcy court that was eventually dismissed. (Doc. 1 at PAGEID 8). Plaintiff's complaint again does not specify whether his malicious prosecution claim is brought as a federal or state law claim. The elements of the tort of malicious criminal prosecution under Ohio law are "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 397 (6th Cir. 2016) (citing *Trussell v. Gen. Motors Corp.*, 559 N.E.2d 732, 736 (Ohio 1990)).

"Federal malicious-prosecution claims operate in much the same way. They require a plaintiff to 'show, at a minimum, that there is no probable cause to justify an arrest or a prosecution.'" *Bickerstaff*, 830 F.3d at 397 (citing *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 675 (6th Cir. 2005)).

Plaintiff has not alleged any factual allegations to support the inference that defendant Karen Collier instituted criminal prosecution proceedings against plaintiff. The Court is unable to discern from the facts alleged in the complaint any federal statutory or constitutional provision that applies to give rise to an actionable claim for relief. In any event, plaintiff, as the debtor in the bankruptcy proceeding, has no standing to challenge the adversarial claim as the bankruptcy trustee is the only party who can sue and be sued on behalf of the bankruptcy estate. *See In re Simone*, 105 B.R. 393 (N.D. Ohio 1989). Plaintiff's malicious prosecution claim against defendant Karen Collier should be dismissed.

## IV. Motion for Sanctions

In plaintiff's response in opposition to defendants' motion to dismiss, plaintiff moves the Court "for sanctions" arising from defendants' alleged disclosure of "settlement discussions" in their motion to dismiss. (Doc. 29 at PAGEID 247). Fed. R. Civ. P. 37(b)(2) provides for sanctions where a party fails to comply with a discovery order. It is unclear what "settlement discussions" plaintiff is referencing regarding his motion for sanctions. It appears that plaintiff may be alleging that the "settlement discussions" at issue are contained as an exhibit to defendants' motion dismiss. (See Doc. 21 at PAGEID 198-201).

The Court construes plaintiff's motion for sanctions as a motion to strike because plaintiff is asking that the settlement discussions "should at a minimum be stricken from the motion." (Doc. 28 at PAGEID 247). Pursuant to Fed. R. Civ. P. 12(f), a court "may strike from

12

a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The statements in the exhibit referenced by plaintiff are not sworn statements and have not been offered as evidence. The Court therefore has not considered the parties' statements in Doc. 21 at PAGEID 198-201 in deciding defendants' motion to dismiss.

**V. Conclusion**

Based on the foregoing, it is **RECOMMENDED** that:

1. Defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) (Doc. 21) be **GRANTED**.
2. Plaintiff's motion for sanctions (Doc. 29) should be **DENIED** as moot.

Date: 12/21/2020

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

ANDREW BINKS,  
    Plaintiff  

    v.  

KAREN L. COLLIER, *et al.*,  
    Defendants.  

Case No. 1:20-cv-78  
McFarland, J.  
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).